UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL FOSTER,

        Plaintiff,        Case No. 1:09-cv-1155

v.        Honorable Paul L. Maloney

PATRICIA CARUSO et al.,

        Defendants.
        /

**OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has been directed to pay the initial partial filing fee when funds become available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.      Factual allegations

Plaintiff Michael Foster presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Oaks Correctional Facility (ECF). He sues MDOC Director Patricia Caruso, MDOC Deputy Director Dennis Straub, MDOC Correctional Facilities Administrator Jim Armstrong, and the Michigan Parole Board, together with the following ECF employees: Warden Cindi S. Curtin, Deputy Warden Tim Ball, and Assistant Deputy Warden Rick Sharp.

According to the amended complaint, on November 19, 2008, Plaintiff appeared at a parole hearing before parole board member David Kleinhardt. Kleinhardt asked about Plaintiff's completion of the Assaultive Offender Program (AOP). The resident unit manager who represented Plaintiff at the hearing, Lynne Phillipson, advised Kleinhardt that Plaintiff's transfer to a Level 4 facility had been approved. Phillipson told Kleinhardt that, once Plaintiff was at Level 4, he would be able to access AOP. With that information, Kleinhardt gave Plaintiff a twelve-month continuance so that he could complete AOP.

On January 14, 2009, Plaintiff arrived at Level 4 of ECF. He asked how he could get enrolled in AOP. He was told that ECF did not offer AOP. Plaintiff explained to Assistant Resident Unit Supervisor Schiebner that he needed to complete AOP before his next parole hearing. Schiebner told Plaintiff that, because he was working his way down from Level 5, he would need to stay at ECF Level 4 for a year before he would be eligible for transfer. Plaintiff met with Psychologist Amy D'Amata, seeking an evaluation of his need for AOP. D'Amata told Plaintiff that ECF did not offer AOP and that she could do nothing for him.

Plaintiff then kited Defendant Warden Curtin, describing his situation and requesting a transfer. Curtin did not reply. Plaintiff filed a grievance concerning the matter, which was denied at all three steps of the grievance process. The Step III grievance respondent was Defendant Armstrong.

Plaintiff had another parole hearing on May 11, 2009. He was interviewed by parole board member David Fountain. Plaintiff described his efforts to take the AOP classes. Parole was denied on May 15, 2009, because Plaintiff had not completed AOP.

Plaintiff sought a declaratory ruling directly from Defendant Caruso, seeking acknowledgment of his rights to be placed in a therapy program and transferred to another facility. Defendant Caruso did not respond. Plaintiff mailed to the Attorney General's Office a copy of the document sent to Caruso. The Attorney General's Office responded that it could not represent individuals, but it had forwarded his letter to Defendant Caruso.

On September 21, 2009, Plaintiff was scheduled for a parole hearing in front of Paul Condino. He was denied parole a third time for not having completed AOP.

Plaintiff alleges that Defendants' denial of a transfer and access to AOP violated numerous prison procedures. He further argues that he has a liberty interest in the AOP program under state law and that his deprivation violated his right to due process. He also alleges that Defendants' failure to transfer Plaintiff so that he could fulfill his mandatory therapy for the parole board denied him equal protection because other similarly situated prisoners had been afforded the right to take AOP.

II.     <u>Failure to state a claim</u>

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Ashcroft*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Plaintiff first alleges that he has a liberty interest in obtaining the therapy required by the parole board. Contrary to his assertions, plaintiff does not have a federally cognizable liberty interest in participating in rehabilitative treatment programs or being housed at a particular facility. "[A]n inmate has no justifiable expectation that he will be incarcerated in any particular prison within a State . . . ."*Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976). In addition, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs based on the Fourteenth Amendment. *See, e.g.*, *Moody*, 429 U.S. at 88 n.9 (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services); *Carter v. Morgan*, No. 97-5580, 1998 WL 69810, at *2 (6th Cir. Feb. 10, 1998) (no constitutional right to educational classes); *Tribell v. Mills*, No. 93-5399, 1994 WL 236499, at *1 (6th Cir. June 1, 1994) ("[N]o constitutional right to vocational or educational programs"). Under these authorities, Plaintiff has no due process claim arising from defendants' decision to deny him a transfer so that he could participate in AOP.

### B. Equal Protection

Plaintiff asserts that his equal protection rights were violated when he was arbitrarily denied transfer and placement in AOP. The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Plaintiff does not suggest that he is a member of a suspect class, and "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir.1998). In addition, prisoners do not have a fundamental right to a particular placement or program under the Constitution.

Because neither a fundamental right nor a suspect class is at issue, the rational basis review standard applies. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby,* 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, the assignment of prisoners to particular facilities is integral to the appropriate administration of the prison system, and courts ordinarily afford great deference to such decisions. *See Hewitt v. Helms*, 459 U.S. 460 (1983); *Hutto v. Finney*, 437 U.S. 678 (1976). Prison administrators must consider, among other things, prisoner and staff safety, cost effectiveness, prisoner health and religious needs, and many other variables. Plaintiff admits that he was informed that he was not eligible for a transfer because he was a prisoner who had only recently been reclassified from the most restrictive Level 5 to Level 4 and who needed to demonstrate appropriate conduct at Level 4 for one year before he was eligible for a transfer. That proffered reason was entirely legitimate and rational.

Further, Plaintiff fails to identify any prisoner similarly situated to himself, except to generally claim that other prisoners have been allowed to participate in AOP. He does not allege that any other prisoner at ECF who had recently been reclassified from Level 5 to Level 4 was transferred so that he could take AOP. Moreover, assuming some similar prisoner was transferred for AOP purposes, Plaintiff fails to allege that any difference in treatment was intentional.

For all these reasons, Plaintiff fails to state an equal protection claim.

### C. State-Law Claims

Defendants' alleged failures to comply with administrative rules or policies do not rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No.

94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Moreover, to the extent that Plaintiff's amended complaint presents claims under state law, this Court declines to exercise jurisdiction. "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits." *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:  March 3, 2010                  /s/ Paul L. Maloney
                                       Paul L. Maloney
                                       Chief United States District Judge